# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

15 OCT 14  PM 3:40

CLERK-LAS CRUCES

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

The body of Michael Bow Smith

)
)
)   Case No. 15-638 MR
)
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Michael Bow Smith

located in the _____ District of _____ New Mexico _____, there is now concealed *(identify the person or describe the property to be seized)*:

Sample DNA, collected in the form of oral swabs

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, Section 2242 | Aggravated Sexual Abuse |
| Title 18, Section 2243(a) | Sexual Abuse of a Minor |

The application is based on these facts:
See attached affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Matthew R. McCloskey, Special Agent of the FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/14/15

City and state: Las Cruces, N.M.

*Judge's signature*

LOURDES A. MARTINEZ
U.S. MAGISTRATE JUDGE
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF NEW MEXICO

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| vs | ) |
| | ) |
| **Michael Bow Smith** | ) |
| | ) |
| | ) |

### AFFIDAVIT

THE UNDERSIGNED, BEING DULY SWORN, DEPOSES AND SAYS THE FOLLOWING:

1)   I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI). I have been employed by the FBI since July 2014 and I have been assigned to investigate violations of Federal Law.

2)   I submit this affidavit in support of an application for a Federal Search Warrant to seize oral swabs containing sample DNA from Michael Bow Smith (Smith). This affidavit contains facts known by me or told to me by other sworn law enforcement officers. The facts, articulated below, will show that there is probable cause to believe that Smith sexually assaulted Jane Doe, a juvenile female, in violation of Title 18, Sections 1153 and 2242(2) and may have transferred DNA to Jane Doe during the alleged sexual assault.

3)   On March 10, 2015, Jane Doe, a juvenile female, 15 years old, disclosed to Lincoln County Medical Center staff that she had been sexually assaulted at the home of Michael Bow Smith, 197 South Tularosa Canyon, Mescalero, New Mexico on March 8, 2015 or March 9, 2015.

4)   On March 10, 2015, FBI SA Daniel J. Sarkozy interviewed Jane Doe at the Lincoln County Medical Center. Jane Doe stated that she had been visiting friends at 197 South Tularosa Canyon, Mescalero, New Mexico, the home of Michael Bow Smith, from March

1



7, 2015 until March 10, 2015. Jane Doe stated that, at some point during the late hours of March 8, 2015 or the early hours of March 9, 2015, Jane Doe's vision became blurry and the lights became dim. Jane Doe admitted that she drank alcohol and smoked marijuana earlier in the evening. She may have passed out. She felt something sharp poke her arm. When Jane Doe awoke the next morning, she found that her shirt was inside out, her pants were unbuttoned, and her hair and make up were a mess. She felt soreness in her genitalia and felt "violated." Jane Doe was unable to positively identify the person who assaulted her. However, Jane Doe stated that she believed that Smith assaulted her. At the time of the alleged sexual assault, Jane Doe was alone in the house with three males: Smith, Flint Peso, and John Doe (a juvenile male). Jane Doe reported that, during the days leading up to the assault, Smith attempted to have sex with her on multiple occasions. Jane Doe rejected Smith's approaches.

5) On March 10, 2015, Gloria Swanson, a Registered Nurse (RN) and certified Sexual Assault Nurse Examiner conducted a Sexual Assault Nurse Exam (SANE) of Jane Doe. During the SANE exam, Jane Doe told RN Swanson that she had been sexually assaulted at the home of Michael Bow Smith. Jane Doe stated that the assault occurred on Sunday, March 8, 2015. Jane Doe was with her friends. She got up to get a drink of water and everything started to go blurry and dark. Jane Doe heard grunting and laughing. When she woke up, her shirt was inside out, her buttons were "done weird," her underwear was twisted, and her shoes were on backwards. The SANE exam showed no signs of needle marks in Jane Doe's arm. The SANE exam did reveal that Jane Doe had an abrasion and a laceration in her genital area and that fresh bloody drainage was present. RN Swanson collected swabs from Jane Doe's genitals, mouth, fingernails, and neck, as well as items of Jane Doe's clothing, including panties and shorts, which Jane Doe wore at the time of the alleged sexual assault.

6) On March 13, SA Sarkozy interviewed John Doe, age 17. John Doe consented to be interviewed and admitted to being present at Smith's house during the night of March 8 - March 9, 2015. John Doe confirmed that he was there with Jane Doe, Smith, and Flint Peso, and that those four were the only ones present overnight. John Doe stated that he and Jane Doe had consensual sexual intercourse on March 7, 2015, and that they had "hooked up" multiple times during the previous week. He also stated that he heard Smith having a sexual encounter with another female earlier in the evening on March 8, 2015, and that female left

the residence.  John Doe consented to provide a DNA sample.  SA Sarkozy collected oral swabs from John Doe.

7)   On March 17, 2015, SA Sarkozy interviewed Flint Peso, age 21.  Peso consented to be interviewed and admitted to being present at Smith's house during the night of March 8 - March 9, 2015.  Peso stated that he had been drinking heavily and passed out on a couch in Smith's living room.  He did not remember any of the activities which occurred.  Peso denied having sexual intercourse with any female while at Smith's house.  He stated that Jane Doe and John Doe had engaged in sexual intercourse.  Peso consented to provide a DNA sample.  SA Sarkozy collected oral swabs from Peso.

8)    On March 17, 2015, SA Sarkozy attempted to interview Smith, age 30.  SA Sarkozy and Bureau of Indian Affairs (BIA) SA Randy Vettleson advised Smith of his *Miranda* rights and advised Smith that they were there to talk to Smith about three allegations: a physical assault, an illegal firearms charge, and the sexual assault.  Smith agreed to discuss the physical assault and the illegal firearms charges and provided self-incriminating information about those allegations.  However, Smith declined to talk to agents about the alleged sexual assault without a lawyer present.  SA Sarkozy requested that Smith consent to provide a DNA sample.  Smith declined consent.  Smith's declination was honored and the interview terminated.

9)   Oral swabs from Jane Doe, John Doe, and Flint Peso were submitted to the FBI Laboratory along with swabs and items of clothing obtained from Jane Doe as part of the SANE exam of Jane Doe.  The FBI Laboratory conducted a DNA analysis and compared DNA obtained through the oral swabs of Jane Doe, John Doe, and Flint Peso with DNA samples recovered from Jane Doe. In a Report of Examination dated July 20, 2015, the FBI Laboratory provided the results of its DNA analysis, which are summarized in paragraphs 10 through 19 below.

10)  The FBI Laboratory identified semen and foreign DNA on Jane Doe's vaginal swabs, mons pubis/outer labia majora swabs, panties, and shorts, all of which had been taken from Jane Doe during her SANE exam on March 10, 2015.  The FBI Laboratory also identified foreign DNA on neck swabs and fingernail swabs taken from Jane Doe during her SANE exam on March 10, 2015.[1]  All DNA

---

[1] With regard to swabs taken from Jane Doe's neck, foreign DNA was identified. Flint Peso was excluded as a contributor, though results were inconclusive as to whether John Doe may have been a contributor.  With regard to swabs taken from Jane Doe's fingernails, foreign DNA was identified.  Results were

3



identified was compared with samples of Jane Doe's DNA to exclude the possibility that DNA identified through the analysis was Jane Doe's. In the discussion that follows, any reference to DNA identified is exclusive of, and in addition to, DNA identified as originating from Jane Doe herself.

11) With regard to the DNA found on Jane Doe's vaginal swabs, DNA analysis indicated the presence of DNA from at least two individuals. A major, unknown contributor was discerned through the DNA analysis and was deemed by the FBI Laboratory to be suitable for comparison purposes. Both John Doe and Flint Peso were excluded as the major contributor based on comparisons with the DNA samples they provided. However, results were inconclusive as to whether John Doe and/or Flint Peso may have been minor contributors.

12) With regard to the DNA found on Jane Doe's mons pubis/outer labia majora swabs, DNA analysis indicated the presence of DNA from at least three (3) foreign sources. Neither John Doe nor Flint Peso could be excluded as possible contributors.[2]

13) With regard to the DNA found on Jane Doe's panties, the FBI Laboratory identified DNA in four different semen stains on the panties. Analysis of Stain 1 indicated the presence of DNA from at least two (2) individuals. The major contributor of DNA was identified to a reasonable degree of scientific certainty as John Doe. The analysis indicated the presence of DNA from a minor contributor, which could be used for exclusionary purposes. Flint Peso was excluded as the minor contributor.

14) Analysis of Stain 2 indicated the presence of DNA from at least two (2) individuals. A major, unknown contributor was discerned through the DNA analysis and was deemed by the FBI Laboratory to be suitable for comparison purposes. Both John Doe and Flint Peso were excluded as the major contributor based on comparisons with the DNA samples they provided. However, results were inconclusive as to whether John Doe and/or Flint Peso may have been minor contributors.

---

inconclusive as to whether John Doe and/or Flint Peso may have been contributors. No foreign DNA was identified on oral swabs taken from Jane Doe as part of her SANE exam.

[2] The FBI Laboratory uses the phrase "cannot be excluded" in a way that is synonymous with the term "match". The phrase "cannot be excluded" is used in place of the word "match" when there are multiple contributors to a DNA sample.

4

*MRM*
*Lam*

15) Analysis of Stain 3 indicated the presence of DNA from at least two (2) individuals. However, the results could only be used for exclusionary purposes. The results were inconclusive as to whether John Doe and/or Flint Peso may have been contributors.

16) Analysis of Stain 4 indicated the presence of DNA from at least two (2) individuals. A major, unknown contributor was discerned through the DNA analysis and was deemed by the FBI Laboratory to be suitable for comparison purposes. Both John Doe and Flint Peso were excluded as the major contributor based on comparisons with the DNA samples they provided. Flint Peso was also excluded as a minor contributor, though results were inconclusive as to whether John Doe may have been a minor contributor.

17) With regard to DNA obtained from a semen stain found on Jane Doe's shorts, DNA analysis indicated the presence of DNA from at least two individuals. A major, unknown contributor was discerned through the DNA analysis and was deemed by the FBI Laboratory to be suitable for comparison purposes. Both John Doe and Flint Peso were excluded as the major contributor based on comparisons with the DNA samples they provided. However, results were inconclusive as to whether John Doe and/or Flint Peso may have been minor contributors.

18) The FBI Laboratory determined that the unknown DNA found on the vaginal swab, semen Stains 2 and 4 on the panties, and the semen stain on the shorts were consistent with arising from the same male individual. In other words, DNA analysis indicated that semen found on Jane Doe's vaginal swab, panties, and shorts originated from a single male individual, and that individual was neither John Doe nor Flint Peso.[3] Additionally, the FBI Laboratory determined that a minor contributor to DNA from semen Stain 1 on the panties belonged to an unknown contributor who was neither John Doe (the major contributor) nor Flint Peso (who was excluded). Also, DNA found on Jane Doe's mons pubis/outer labia majora swabs were a mix of at least three (3) different

---

[3] Note that Flint Peso and/or John Doe may have been minor DNA contributors. In fact, John Doe was positively identified as the major contributor to the DNA sample found on Stain 1 on Jane Doe's panties. This is not surprising given that John Doe admitted to having consensual sex with Jane Doe at some point during the days preceding the alleged sexual assault. Analysis of Jane Doe's mons pubis/outer labia majora swabs indicated the presence of DNA from at least three individuals, excluding Jane Doe. Neither John Doe nor Flint Peso could be excluded as contributors for this sample. According to the FBI Laboratory, this means that DNA in this sample matched DNA contained in the samples from both John Doe and Flint Peso.

5

DNA types that matched DNA samples from John Doe, Flint Peso, and a third, unknown individual.

19) The FBI Laboratory entered the nuclear DNA results from Stain 2 into the Combined DNA Index System (CODIS) to be maintained for future comparisons. The FBI Laboratory requires a known blood or saliva sample to be submitted for comparison.

20) Michael Bow Smith (enrollment number 03119) is known by SA Sarkozy to be an enrolled member of the Mescalero Apache Tribe.

21) The residence located at 197 South Tularosa Canyon, Mescalero, New Mexico, the site of the alleged sexual assault, is known to lie within the exterior boundaries of the Mescalero Apache Reservation.

22) Based on the facts and circumstances set forth in this affidavit, this affiant submits that there is probable cause to believe that on or about March 8, 2015, Michael Bow Smith, age 30, an enrolled member of the Mescalero Apache Indian Tribe, did knowingly engage in a sexual act with a person while that person was incapable of appraising the nature of the conduct or physically incapable of declining participation in the sexual act, and that sexual act constituted an assault against an individual who had not attained the age of 16 years and was at least four (4) years younger than the person so engaging, and occurred within Indian County in violation of Title 18, Sections 1153, 2242(2), and 2243(a). This affiant also submits that there is probable cause to believe that Michael Bow Smith transmitted his DNA to Jane Doe in the process of engaging in said sexual act, and that DNA obtained from Michael Bow Smith via an oral swab will be a match for unknown DNA samples found on Jane Doe's person and clothing as identified by the FBI Laboratory. Based on these facts, this affiant respectfully requests that this court issue a Federal Search Warrant to obtain oral swabs containing sample DNA from Michael Bow Smith so that the same can be submitted to the FBI Laboratory for DNA analysis and comparison to the DNA analysis results recovered from Jane Doe and maintained by the FBI Laboratory in CODIS.

[Continued on next page]

*MRM*

Respectfully submitted,

_____
Matthew R. McCloskey
Special Agent
Federal Bureau of Investigation


Subscribed and sworn,
Before me the _14th_ day of ___October___, 2015.


_____
United States Magistrate